Good morning. May it please the Court, my name is John Pope, and I represent Mr. Manuel Raya in these proceedings. He is the petitioner. Your Honors, I believe this case has three main issues. One is whether or not this conviction under 646.9 of the California Penal Code is a crime involving moral turpitude. There's a stop-time rule issue. Why don't we have to defer to the BIA on that? I think it might be Skidmore deference in this case, and it would be Chevron deference for that similar case based on the Michigan stalking statute. Yes, Your Honor. A good example of that is that when the Ninth Circuit ruled in Malta-Espinoza, the BIA also almost immediately after has issued a decision based on this same statute that arose in the Fourth Circuit and raised that very same issue on why it should, why the Court should give deference to that. I believe the Court has already ruled on this issue. I don't think it is a proper issue for deference. The interpretation of this statute has been pretty clear, and I believe that there really isn't a deference issue. I thought we had an en banc where we decided we did have to. I'm sorry. I did not hear you. I thought we had an en banc in the Ninth Circuit where we decided we did have to defer to the BIA's interpretation of what was a crime of moral turpitude. It used to be real simple. It was either dishonesty or sex years ago. And now it isn't anymore. And the Supreme Court in that drunk – I think it was a drunk driving case. Leo Kelsey. Came up with a new test, something about mens rea plus harmful to other people, something like that. And it's kind of a vague test. The BIA administers this statute. I can't see why under our en banc and under the ordinary principles of Chevron deference we wouldn't have to defer. I think for several reasons, Your Honor, one being that this particular issue hasn't been previously decided until the Board made a specific decision that they believe the 646.9 is categorically a crime involving moral turpitude. I think that, especially based on the 1995 statute, that is an error. The 1995 statute – We had this recent case, Ladder-Singh, right, which is pretty close to this. So the question is, it seems to me what's most useful in determining whether this is a crime of – and there we did uphold the Board. And so the question is, how is this different? I believe, Your Honor, there are several differences from that case. The first is, Mr. Rya was convicted in 1995. In 1995, the statute was different. It required the infliction of substantial emotional distress. The statute – the statute was actually broken down into two parts, one for following, one for harassment. If you look at the harassment part and the definition of harassment in the statute in 1995, the statute required an intent of knowing and willful, as well as the prohibitive acts of alarming, annoying, tormenting, or terrorizing. Now, I don't think in anyone's definition of a crime involving moral turpitude does the word annoying come up. An annoying conduct is not a depraved act. If that's all it was, I think you'd have a solid winner, I agree. But doesn't it also require an intent to put the victim in fear? It does require an intent to put the victim in fear. And in this case – So the real difference, as I understand it, between this and Ladder-Singh was in Ladder-Singh there had to be fear of something specific, which is serious injury or death. And here it doesn't really say what, fear of safety, but it doesn't say what. There was no fear expressed in the record of conviction. There was no evidence of substantial emotional trauma. Well, wait a minute. The record of conviction, I mean, here the BIA never reached a modified categorical approach, right? That's correct. They never – We're only talking categorical approach. If this doesn't meet the categorical approach, I assume we'd have to remand. Yes, Your Honor. And I would agree that it does not meet that standard. All right. So I want to know why. So am I – just to pursue it, is the difference between this and Ladder-Singh, the difference between reasonable fear for his or her safety, and the safety of the immediate family on the one hand, and fear of serious physical harm and death on the other, is that the difference? Is that the total difference? And, ma'am, Mr. Rya harassed a gentleman who he did not have a domestic relationship with. But we're not up to that. We're only up to the statute at this point, right? I understand, ma'am.  So I want to know – And that's the point I'm trying to make, is that annoying in the statute – Annoying has nothing to do with it, as Judge Kleinfeld points out, because there's an and, and the and is who makes a credible threat with the intent to place the person in a reasonable fear for his or her safety. So that's just irrelevant. What matters is whether the threat part of this is sufficient. Is that – am I wrong about that? No, ma'am. And I don't believe the threat part is sufficient. Okay. Now I want to know why. Okay. I'm sorry. Because the statute itself in 1995 is broken down into following or harassing. And the harassing part of it – All right. You're just refusing to deal with the question. You're just flat refusing to deal with the problem. I'm sorry. Maybe I don't understand. Because it says and. You have to willfully and maliciously harass another person and make a credible threat with the intent to place that person in reasonable fear. So the part about following and maliciously harassing and all that just has nothing to do with our problem. The problem is, is the make a credible threat with intent to place that person in reasonable fear sufficient to make it a CIMT or not? We don't believe it is, ma'am.  Why? Okay. If you look to the way the State of California has interpreted the statute, the State of California says there are really two acts here. And the harassment part of it is not sufficient to carry a determination of a crime involving moral turpitude. We believe that annoying and harassing altogether. Why wouldn't it be a crime of moral turpitude just to send somebody a polite letter explaining credibly in the circumstances that you're going to kill and dismember him and all the members of his family? Why couldn't that be a crime of moral turpitude? I'm not saying that it couldn't, Your Honor. I'm saying that. Why isn't it? I mean, it seems to me that no matter how much, how soft the definition of harasses is, and arguably it's pretty soft, once you've got that phrase after the end, makes a credible threat with the intent to place that person in reasonable fear for his or her safety, the polite letter case is covered. I think that it turns on is it a reasonable fear. Why wouldn't it be reasonable?  Excuse me, Your Honor. That hypothetical is exactly a letter saying it would be covered. The question is whether this statute is broader than that, because it doesn't require a letter like that. Maybe it requires a letter saying, I'm going to take you to the beach and we're going to go swimming, and maybe that puts somebody in reasonable fear for his safety. In other words, it doesn't say that it has to be a fear of physical injury, of serious physical injury or death. That's the difference, and you're just not focusing on that. And does that matter? Is the difference between reasonable fear of safety and fear of serious physical injury and death a difference that matters for CIMT purposes? I think it does, Your Honor. Why don't you have that? I mean, you can certainly annoy without putting somebody in fear. Gosh, it's annoying when people, oh, if you get a pro se who keeps filing nonsense pleadings that you can't understand but you can't close the file either. That's annoying. On the other hand, when you get a death threat from somebody who's killed people before or somebody who has what's apparently good reason to kill you, that may also be made with the intent to put you in fear. You can be annoying without putting in fear. You can put in fear without being especially repetitive about it. And I believe that, Your Honor, you're absolutely right. The full range of conduct covered under this statute. It seems here I need both in order for somebody to be guilty under this statute. Yes, Your Honor. He has to be an annoying fellow in one way or another, and he has to have the intent to put reasonably in fear, and that would seem to narrow it much more than you're basing your argument on. Well, Your Honor, I've gone over my time already, and I was going to ask to reserve two minutes. But I would like to ask you. I'll give you the two minutes. Thank you. I have one other question. Yes, ma'am. As far as I can tell, this is pretty much the only issue in the case, because the – if you get beyond this or if the government gets beyond this, you then have the discretionary denial as to which it's very difficult for us to review it. And I'm not saying that this is a crime involving moral turpitude. I'm saying that this is a crime involving moral turpitude. You raise some other issues, but I don't understand why they're relevant, because either this is a crime of moral turpitude or it isn't. And if it is, then he's removable, period. But he would not have been removable at the time, Your Honor. In 1995, that would have been one crime involving moral turpitude for a lawful permanent resident with more than five years in the United States. So he would not have been removable with one CIMT. You need two. And he – and in – I'm sorry. And in this case, this constituted his second crime involving moral turpitude, but he would still be eligible for cancellation of removal. The judge heard the entire cancellation case. I understand that, but I don't – The judge – The judge heard the entire cancellation case, but I don't understand why it's not  I don't understand why it's not a crime involving moral turpitude. So therefore, I don't see why anything else in the middle matters. Your Honor, there was, I believe, a very serious abuse of discretion. Look at the – But you agree that we would have to get beyond the discretion before we'd get to your other issues. Yes, Madam. I agree with you. Thank you very much. May it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United  States. And, yes, I think the panel has it exactly right. This case is about the crime involving moral turpitude and whether or not the Court owes the immigration – excuse me, the board's determination, which is based upon the published opinion adjani. Well, wait a minute. That statute's different. And it's different because it's more – the adjani statute's different because it's more like the Ladder-Singh statute because both of them say what the threat has to be about. And this one doesn't say anything about what the threat has to be about. Well, I guess in the board's decision, it didn't matter. And I'll certainly address Ladder-Singh. Ladder-Singh was a very narrow holding. And, yes, the narrow holding keyed upon the nature of the threat involved in the statute. And that's true of the adjani, too. That statute also said what the – was basically parallel to the Ladder-Singh statute, and it said what the threat had to be of. It is similar. But I guess what my point is, Your Honor, is that there is nothing in the Ladder-Singh opinion which holds that it would be unreasonable for the administrative adjudicator to include that the conduct punished without the threat of extreme violence would not be a valid argument. I understand that. All I'm saying is that I don't think your deference argument is based, I mean, on anything but this particular ruling, because adjani was not a statute like this. It was a statute like Ladder-Singh. That's right. But, again, the board's determination in – excuse me – in adjani was not in – it certainly was in the context of the fact that the statute punished a threat of violence. There's no question about that. But that wasn't the basis. That wasn't – again, it – So it's any threat? What does adjani hold, in your view? Adjani holds that the intentional transmission of threats is evidence of a vicious motive and corrupt mind, and accordingly, a crime in – What if I threatened to, you know, tell your daughter that you're a bad person? I mean, it can't mean that. If under the statute that adjani interpreted in this – statute in this case, which both have the same element of making a threat with the intent of putting a person in fear for their own personal safety, or perhaps worse, the safety of their immediate family, yes, that does rise to a CIMT. And that's what the board in adjani was saying. And that's why deference is owed because – Now, what is the holding of adjani? I'm sorry? What is the holding of adjani? Under the – under the precepts of the statute in question, where the violator must act willfully, embark upon a course of conduct as opposed to a single act, and In those circumstances, the intentional transmission of threats is evidence of a vicious motive or corrupt mind, and accordingly, the conduct is a crime involving moral turpitude. This statute that we're dealing with has essentially, if not exactly, the same requirements. There is a requirement that – So you want us to hold that adjani is correct in saying that whenever there is a willful threat of anything? In the context of the statute. Of anything? In the context of this statute. Well, if it's in the context of the statute, that statute is different. The statute is in the context of the – That's why I keep asking what the holding is. In the – well, in the context of the portion of the statute upon which the board relied, the board certainly acknowledged that it was a statute which punished extreme threats. There's no question about that, but that's not what the board focused upon. The board focused upon the matters that I've just discussed, and I guess that's the holding, where the statute requires that the violator acts willfully, embarks on a course of conduct as opposed to a single act, causes another to feel great fear. In that context, the intentional transmission of threats is evidence of a vicious motive or corrupt mind. Well, let me ask you, are you asking us to defer to adjani or to the board's decision that this statute is in all material respects like adjani? Yeah. This – obviously, this Court's decision in Marmoleo Campos focused the Chevron deference issue, and in Marmoleo Campos, the Court said that where a decision – an unpublished decision of the board is – relies in essence upon a decision in a published case, then Chevron deference is owed. I think – I think it's Skidmore to the unpublished. Well, yeah. Deference is Skidmore to unpublished, but where an unpublished decision relies on a decision in a published case, then Chevron deference is owed. I don't know if that's quite right. Often, an unpublished decision is an application of a published decision to somewhat distinguishable facts, so I don't think it would get Chevron deference to the extent that the facts were different or the cases were distinguishable on some reasonable basis. Well, you know, this is a really factual matter. But I don't know if it matters. This is not a fact – yeah. This is not a factual matter. This is a legal issue. And what I – I guess what I'm saying is the Court in Marmoleo Campos said, certainly in a question where there is a legal issue resolved and the unpublished decision relies on the published decision resolving the legal issue, then the two are the same and Chevron deference is due. And we believe, again, because of the matters that I've just discussed, that Ajami – the legal issue in Ajami is exactly the same legal issue as is present in this case. If we didn't think that, I gather that here there might be documents that demonstrate that, in fact, the threat was a threat, that there might be documents that demonstrate that the threat was a threat of serious physical injury or death. I think that's right. But obviously, as you pointed out to my brother, we don't get to that question unless you – So you would agree that if we thought that was not categorical, we would remand? Oh, yes. You'd have to remand so that the Board could make the modified categorical analysis, of course. But it is clear to the government, as we've argued in our brief and as we're arguing here, that the Board's – in Marmolejo Campos' terms, the Board's determination that this statute punishes categorically, every act that can be punished under the statute is a crime involving moral turpitude, is a reasonable construction of the statute. If it's a reasonable construction of the statute – and we all agree upon what the statute says. But what if it didn't have the safety language in it? Would ajami still apply? If this statute didn't have the safety language in it, would ajami still apply? If that's a question I'm not so sure that I can answer, I presume – I presume that it would, but if the Court wishes me to brief the question, I will. Well, I'm just trying to understand what the holding – I mean, the holding of ajami in the actual sentence is pretty broad. It seems to say that if you intentionally threaten somebody with anything, that that's a problem. And in Ladder-Singh, as you saw, we certainly spent a lot of time worrying about the fact that the thing that was being threatened was itself a crime of moral turpitude had it occurred. And the question is whether that's true here, and it's not – or whether ajami requires that. It seems to me that it doesn't. Well, again, the Court in Ladder – your decision in Ladder-Singh was very focused and very narrow, and there is absolutely nothing in the decision that's true. I guess what I'm asking you is why should it be a crime of moral turpitude to threaten something which, if it occurred, would not be itself a crime of moral turpitude? Because the Board reasonably determined that to put – to make a willful and maliciously embark on a course of conduct to cause someone to feel great fear is turpitude misconduct. Again – And what is it for a big fellow? Continually threatened a little fellow with beating him to a pulp. The actual beating him to a pulp would not be a crime of moral turpitude. It would just be misdemeanor battery. But the repeated threats that were credible in the circumstances to beat him to a pulp and, therefore, cause him to feel fear for the weeks or months that these threats went on, that would be a crime of moral turpitude under your interpretation of California law, is that right? Yes, Your Honor. And I understand that – And is there anything – any good reason why that should be so or bad reason why that should not be so? Well, the reason why it should be so is because the court in Marmoleo Campos leaves it to the Board to determine what is morally turpitude in this so long as it is reasonable. And it is certainly reasonable for the Board to have relied on Ajami, which essentially dealt with the same issue, to conclude that in the context of this statute, threatening to put somebody in fear of their safety or their family's safety was conduct which can't be countenanced by society. It's – Well, that's true of many criminal statutes that presumably are crimes of moral turpitude. Anyway, you've used your time, and thank you very much for a useful argument.  May it please the Court. I think I actually do not notice whether you're over your time or not. I think you probably were. I was over my time. But we'll give you one or two minutes. Go ahead. Your Honor, I wanted to address just that last point that the Court made. We believe that this statute is overly broad and requires a modified categorical approach and a remand back to the agency in order to determine whether or not the Petitioner in this case can be held to have a crime involving moral turpitude. We believe that the statute is overly broad and requires a modified categorical  Petitioner in this case can be held to have a crime involving moral turpitude. And we pretty much know that what he was actually charged with and pleaded guilty as charged to was exactly the Latter-Singh – in fact, he was charged with the Latter-Singh statute, and he then pleaded guilty to another one, but he pleaded guilty as charged that it did have the same language in there. I would not agree that it has the exact same language as the Latter-Singh case. You could not agree, but doesn't it? I mean the statute in 1995 went way beyond. I understand the statute. I want to know what he was charged with and pleaded guilty as charged to. He pleaded guilty to the language of the statute, ma'am, that was the case. He pleaded guilty to an indictment, and he pleaded guilty as charged, or to an information, actually. Which are the actual words of the statute? I actually think that's not so, but we can look. Thank you, ma'am. Thank you. Thank you very much. We submit, ma'am. The case of Rea Moreno v. Holder is submitted.
judges: Schroeder, Kleinfeld, Berzon